IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


RICKY WHITE                                                                              PLAINTIFF


v.                                      NO. 5:09CV00104 HDY


MICHAEL J. ASTRUE, Commissioner of                                        DEFENDANT
the Social Security Administration


MEMORANDUM OPINION AND ORDER


BACKGROUND. Plaintiff Ricky White ("White") began his attempt to obtain benefits by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration. He next requested, and received, a de novo hearing before an Administrative Law Judge, who eventually issued a decision adverse to White. He then appealed. The Appeals Council affirmed the decision, which became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). White next commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole undertaking for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. The determination requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE COMMISSIONER'S FINDINGS. The Commissioner made findings pursuant to the five step sequential evaluation process. At step one, the Commissioner found that White has not engaged in substantial gainful activity since the alleged onset date. At step two, the Commissioner found that White has the following severe impairments: "mild degenerative disc disease and borderline IQ." See Transcript at 15. At step three, the Commissioner found that White does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The Commissioner then assessed White's residual functional capacity and found that he is capable of performing light work with the following limitations:

> ... he has mild to moderate pain, but can lift 20 pounds occasionally, 10 pounds frequently, sit 6 hours of an 8-hour workday, stand/walk 2 hours of an 8-hour workday (½ hour at a time), limited overhead reaching with his right arm, climb, crouch, kneel, stoop or crawl occasionally, low average/borderline intellect, is able to perform simple, unskilled/low semi-skilled work activity, can understand, follow and remember concrete instructions, and superficial contact with the public.

See Transcript at 17.  At step four, the Commissioner found that White cannot perform his past relevant work.  At step five, the Commissioner found that, considering White's residual functional capacity along with his age, education, work experience, and the testimony of a vocational expert, there are other jobs existing in significant numbers in the national economy that White can perform.  On the basis of the foregoing findings, the Commissioner concluded that White is not disabled within the meaning of the Act.

WHITE'S ASSERTIONS OF ERROR.  Are the Commissioner's findings supported by substantial evidence on the record as a whole?  White thinks not and advances the following two substantially similar reasons why: (1) his residual functional capacity was not properly assessed, primarily because the Commissioner failed to give proper weight to the findings made by Dr. Thomas Lewellan ("Lewellan"), a treating physician, and Dr. Steve Asemota ("Asemota"), a consultative physician; and (2) the Commissioner failed to give proper weight to the findings made by Lewellan and Asemota.

WHITE'S RESIDUAL FUNCTIONAL CAPACITY.  White first maintains that his residual functional capacity was not properly assessed.  He specifically maintains that there is no medical evidence to support the finding that he has "the physical ability to perform light work ..."  See Document 27 at 8 [emphasis added].  He also specifically maintains that the record contains only two assessments of his functional limitations–one by Lewellan and the other by Asemota–and neither assessment supports the finding that White can perform light work.

-3-

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, including the observations of physicians and non-physicians alike and "[the person's] own description of his limitations," see Caldwell v. Astrue, 2010 WL 582616 at 1 (8th Cir. 2010), and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace," see Brown v. Barnhart, 390 F.3d at 539.[1]

In assessing the medical evidence touching on White's physical limitations, the Commissioner considered the findings made by Lewellan. He began seeing White on a regular basis in February of 2006 for "chronic low back pain, vascular headaches, right shoulder pain, numbness in [his] right hand, and right leg and neck pain." See Transcript at 170. Lewellan prescribed medication for White's pain and headaches and steroid injections for his shoulder. In March of 2006, a magnetic resonance imaging ("MRI") examination of White's lumbar spine was performed. The results of the MRI examination revealed the following: "Mild degenerative disc changes at the L1-L2 level and mild

---

[1] The determination of a person's residual functional capacity involves the consideration of both his physical and mental limitations. See 20 C.F.R. 404.1545. White has some mental limitation as he suffers from a borderline IQ. The Commissioner maintains that White only takes issue, though, with the physical aspect of the residual functional capacity determination and not the mental aspect of that determination. The Court has thoroughly read White's brief and is convinced that the Commissioner is correct: White is only challenging the physical aspect of the residual functional capacity determination, that is, he only challenges whether he has the physical abilities to perform other work. For that reason, the Court will only consider whether the Commissioner's findings as to the physical aspect of White's residual functional capacity is supported by substantial evidence on the record as a whole.

degenerative disk and facet changes at the L5-S1 level.  No evidence of disk herniation, canal stenosis, or foraminal narrowing." See Transcript at 169.  In January of 2008, Lewellan's office manager completed, and Lewellan adopted, a standardized Residual Functional Capacity Form on which it was found that White experiences such chronic pain that it prevents him from working eight hours a day, five days a week, on a regular basis.  Lewellan also adopted the representation that the foregoing finding was based on his experience, ... treatment, examination, and diagnostic testing of [White]." See Transcript at 187.

In assessing the medical evidence touching on White's physical limitations, the Commissioner also considered the findings made by Asemota.[2]  He saw White in June of 2006 for a consultative examination.  White had a normal range of motion, save a reduced range of motion in his lumbar spine, straight-leg raising, and right shoulder and wrist.  He had normal limb function, except that he had a reduced right hand grip and that he could not pick up a coin with his right hand, stand and walk without assistance, walk on his heels and toes, or squat and arise from a squatting position.  Asemota diagnosed White with migraine headaches, shoulder pain, and spondylosis and found that the severity of his limitations range from "moderate to severe." See Transcript at 104.

---

[2] The Commissioner represents that Asemota's findings are found in a report on pages 98-104 of the transcript.  The transcript's list of exhibits, though, attributes those pages to a report by a Dr. Kong Go. See Transcript at 2.  The Court adopts the Commissioner's representation.

In assessing the medical evidence touching on White's physical limitations, the Commissioner also briefly mentioned the notes made by Dr. Bill Payne ("Payne"), a non-examining physician. In the notes made by Payne after reviewing White's medical records, Payne opined the following: "[White] is not at all credible. He did not cooperate at [the] mental exam and at [the] physical exam [he] would not even try some [range of motion exercises]. He reported decreased [range of motion in his] shoulder but [his x-rays were normal]. Other decreased [range of motions] do not appear credible. No [medically determinable impairment is] established." See Transcript at 111.

The Commissioner discounted the findings made by Lewellan and Asemota for what appear to be three reasons. The Commissioner appears to have discounted their findings because they were inconsistent with other evidence in the record, specifically, the results of the MRI examination of White's lumbar spine. The Commissioner also appears to have discounted their findings because White was thought to be a malingerer. In addition, the Commissioner appears to have specifically discounted Lewellan's findings because several of the findings were transcribed by his office manager on a standardized Residual Functional Capacity form prepared for the Social Security Administration. Having discounted the findings made by Lewellan and Asemota, the Commissioner determined that the evidence was such that White is capable of performing light work with certain limitations. For the reasons that follow, though, the Court finds that the Commissioner improperly discounted the findings made by Lewellan and Asemota.

First, the Commissioner did not accord the proper weight to the findings made by Lewellan as a treating physician.[3] Lewellan and the Commissioner both considered the results of the MRI examination of White's lumbar spine. Lewellan's findings as to the results of the examination and White's physical limitations are different than the findings made by the Commissioner. What might explain the difference between the findings made by Lewellan and the Commissioner? The Court does not know for certain, but two points are apparent: (A) Lewellan's findings are not necessarily inconsistent with the results of the examination and the record as a whole as Asemota's findings seem to support Lewellan's findings; and (B) there are no other medical assessments supported by better or more thorough evidence than Lewellan's assessment as he was capable of reading the results of the examination in light of his many examinations of White. The Court is left with the suspicion that the Commissioner strayed into the province of a treating physician in making findings that differed from those made by Lewellan.

---

[3]

The weight to be given a treating physician's findings is clear. In Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006), the Court of Appeals articulated that weight as follows:

> A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir.2005). We will uphold [the Commissioner's] decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 …

Second, the Commissioner did not accord the proper weight to the findings made by Asemota as a consulting physician.[4] Although it does not appear that Asemota considered the results of the MRI examination of White's lumbar spine, Asemota's findings were made at the conclusion of an actual examination of White, are largely consistent with Lewellan's findings, and are not necessarily inconsistent with the results of the MRI examination. Again, the Court is left with the suspicion that the Commissioner strayed into the province of a consulting physician in making findings that differed from those made by Asemota.

Third, the Commissioner accorded too much weight to Payne's opinion that White is a malingerer. Payne offered his opinion on the basis of his review of the record; he never actually examined White. Moreover, neither Lewellan nor Asemota indicated that White is a malingerer. It is true that Asemota noted that White did not attempt some of the range of motion exercises, but it does not follow that he is a malingerer.

Last, it is no reflection on the veracity of Lewellan's findings that several of them were transcribed by his office manager on a standardized Residual Functional Capacity form. Lewellan subsequently adopted the findings, and they are therefore deemed to have been made by him.

---

[4] The weight to be given a consulting physician's findings is not as great as that of a treating physician. The consulting physician's findings are to be given limited weight. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984).

For the foregoing reasons, the Court finds that the Commissioner improperly discounted the findings made by Lewellan and Asemota. As a result, the Commissioner improperly assessed White's residual functional capacity.[5]

CONCLUSION. The Commissioner's findings are not supported by substantial evidence on the record as a whole, and a remand is necessary. Upon remand, the Commissioner shall re-consider the findings made by Lewellan and Asemota. It would be helpful if the Commissioner could obtain some clarification from Lewellan for his findings on the Residual Functional Capacity form, namely, what specific experience, treatment, examination, and testing of White did Lewellan rely upon in making his findings. The Commissioner's decision is reversed, and this proceeding is remanded. This remand is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for White.[6]

IT IS SO ORDERED this ___2___ day of June, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] Having so found, the Court need not consider White's second claim, that being, that the Commissioner failed to give proper weight to Lewellan and Asemota's findings

[6] White's brief was filed as a motion for summary judgment. See Document 27. To the extent an order addressing the motion is necessary, the motion is granted.